Only one case on the calendar. I understand the lawyers are here. And so, thank you. We can begin. Good morning, Your Honor. Robert Jeffress, Solvin & Cromwell for Goldman Sachs. This is a 23-F appeal. We urge the court to decertify what we believe to be an unprecedented expansion of this court's price adoption of the narrow price maintenance theory. In the court below, the district court certified this class based on price-maintaining statements involving business principles and conflicts warnings. And it's a price maintenance case because there's no allegation that when these statements were made, the stock price went up. In the two cases where this court has addressed price maintenance, and that's Barclays and Vivendi, and they're very recent cases, the doctrine has been narrowly construed, and there's a requirement. You need to have a price-maintaining statement, and there needs to be a link between the so-called corrective disclosure and the price-maintaining statement. What you say is correct. Wouldn't Judge Wesley, in his prior decision in the prior panel, simply order the decertification? It seems to me that you're trying to re-argue some of the underlying issues. No, Your Honor. What we're saying is that in order to apply price maintenance to these facts here and the allegations here, you need to look to whether there could be a price-maintaining statement. So in the Barclays case, the allegation was that Barclays made a series of ad hoc disclosures in response to questions about whether it was front-running in its dark pool, and Barclays said no. And then when the corrective disclosure came, and that was the New York State Attorney General saying that those statements were false, that was deemed to be a sufficient set of facts to support a price-maintenance theory. Here, there's absolutely no evidence that supports it. In fact, the district court below did not consider what the statements actually said, in addition to what the actual corrective. Well, it had already considered the materiality of the statements in your 12b-6 motion, which you lost. And if you had the interlocutory appeal, you would have really been able to grind down the materiality issue. But we were quite clear the first time you were here in footnote 6, and the courts have been quite clear regularly in this circuit that you can't revisit materiality. So isn't that really what you're trying to do, Mr. Gentler? No, we're not, Your Honor. Why is that? We're asking the court— Well, you say they're too general. That sounds like materiality to me. We're asking the court to apply Halliburton II. And in Halliburton II, the Supreme Court said that on remand, the district court needed to consider loss-causation evidence. Sure. And that's why the types of studies that you do, you measure it at the back end. You measure that when the disclosures occur, you measure as to whether there's a change in the price. And so you presented expert evidence, and the other side presented expert evidence, and the judge liked the other side's expert evidence better than yours. So isn't that the end of it? No, because Judge Crotty didn't consider what the actual statements were. And in Halliburton— What they were. He had done that already. He'd done it in 12b-6. There's no little extra caveat in 23-F that you get to re-fight materiality. Materiality is a class-wide common problem. That's fought at 12b-6. I understand you don't like losing on the 12b-6, and you make an argument that if we don't do this, that the floodgates will open. You list seven cases. Every single one of those cases which impose, say, something about general statements are all 12b-6 dismissals. Not a single one is a class-action 23b matter, 23-F appeal. So, A, your own cases prove that district courts understand materiality and that they're weeding out the cases in which materiality is not established. And, B, you're asking us to amend a rule in which we've specifically said materiality is not and call it something else. And I can't see why we should do that. I think, Your Honor, under Halliburton II, the Supreme Court made clear you can't artificially limit the evidence that should be considered in assessing price maintenance. And even though loss causation, which the Supreme Court held in Halliburton II. What's your rule, Mr. Jaffer? What is your rule in terms of loss causation? Well, this is what we're talking about is looking at the statements themselves. Right. And as this Court has said 10 times, these statements are not statements that a reasonable investor would rely upon. And again, deciding that they're not material. Yes, but this is about reliance. Yes, correct. And you can't have – let me see if I can go back to Halliburton II. The Supreme Court says quite clearly at page 283 that you can't artificially limit price maintenance evidence. Right. The statements themselves are evidence. The corrective disclosure is evidence. Can an investor rely upon a non-material statement? I don't believe so, no. Why not? I mean, I guess – He can't recover, but couldn't an investor rely upon a statement that's not material? They wouldn't have a claim, but that separates materiality from reliance, doesn't it? I think, yes, an investor could theoretically, but the point here is that if you look at what happened in Halliburton, Halliburton I, the Supreme Court said loss causation was a class-wide issue. Right. It could not be considered. The same argument was made by the plaintiffs to the Supreme Court, and the Supreme Court said no, even though loss causation evidence is a class-wide issue, to the extent it's relevant to price impact, it needs to be considered. The Supreme Court made quite clear that even though the loss causation evidence was highly relevant to the merits, you still had to consider it in assessing price impact. You want to rule before you look at the experts. You want to rule that says that there are certain types of statements that, as a matter of law, can't cause a loss. That sounds so much like materiality to me, that I can't separate the cats. I don't distinguish between two cats. They're cats. I don't like cats. But in any event, Mr. Gifford, in any event, they're cats. In Halliburton II on remand, the same evidence that was loss causation evidence was addressed and considered by the district court in assessing price impact. Here, Judge Crotty did not consider, one, what the statement said, two, what the corrections were to those statements, and he relied upon an allegation of price maintenance where there was absolutely no evidence to support it. The only evidence the other side has, and I would ask the court to look at Judge Crotty's decision. In terms of the evidence, your argument is principally legalized. I see it. Are you challenging the factual determinations, the credibility assessments? I mean, Judge Crotty was not persuaded by Dr. Choi. Is any of that clearly erroneous? What I'm saying is Judge Crotty did not consider the actual statements, number one. He relied upon pure speculation on price maintenance. What we're saying is these statements cannot, under the Second Circuit's own decisions. So what I'm asking you is, assuming we disagree with that, are you challenging the district court's evaluation of the expert reports? That's clearly erroneous in some way, or why? What I'm saying is there was absolutely no evidence to support the notion that these were price-maintaining statements. The other side's expert only did an event study saying there was abnormal returns on three dates. That was all he found. He did not connect and link up those statements with whether the price-maintaining statements were false. So if you look at Barclays. First of all, we know that the price didn't go down on the days that the maintenance statements were made, right? No question. It didn't go up. Well, but it didn't go down either. When Goldman Sachs was issuing these statements in their 10-Ks and elsewhere, the stock price did not go down, correct? That's correct. But the problem was, if you look at the actual statements, which, again, the other side says, well, because Judge Crotty found materiality, and this is at page 65, he was compelled to presume price maintenance, which short-circuits the whole Halliburton II inquiry. You have to look at the statements. The statements are, as we say, warnings. And the so-called conflicts warning is in a 10-K with 10 pages of warnings about increasing conflicts in bold, and they grab one little sentence where they say, well, you say you have extensive procedures to deal with conflicts. Well, let's look at what the corrective disclosures were. The SEC did not say that Goldman Sachs did not have procedures to deal with conflicts. The SEC complaint was about an alleged misrepresentation to a sophisticated CDO investor. It had nothing to do with statements made to shareholders. So there was no connection, no link. And under the theory that the other side is adopting, you just have to assert price maintenance without any evidence that supports it. But you're also pointing to the fact that there were disclosures in the press that related to the existence of conflicts that didn't affect the price either, right? Yes, and it's hard to imagine a case where there could be stronger evidence. There were 36 separate days, all sorts of conflicts involving Goldman Sachs, CDO conflicts, John Paulson conflicts, no stop drops. Judge Crotty says, well, those related, there were denials in connection with those press stories. Not true. Only for 13 of the 36 was there a denial. Does a denial make something not a corrective disclosure? I wouldn't think so. When someone is indicted and the indictment is a speaking indictment that includes all sorts of facts about the alleged scheme, the fact that a person pleads not guilty means it's not a corrective disclosure? There was no evidence in the record to support the denial theory. The district court concluded that the corrective disclosures revealed for the first time hard evidence, is the way the district court put it. Is that a clearly erroneous finding? The problem, Your Honor, is that what was the actual statement? There's three corrective disclosure dates. The first one, there's an abacus SEC complaint. It doesn't make any reference to the so-called price-maintaining statements. It doesn't say that Goldman Sachs doesn't have extensive procedures to deal with conflicts. It talks about a misrepresentation to a collateral selection manager. The second corrective disclosure is a leak of supposed criminal investigations, which never happened, into mortgage trading activity. It doesn't reference any of the challenge statements. And the third corrective disclosure is about a Hudson CDO that was on the front page of the New York Times on December 24, 2009, and there was references in the New York Times to government investigations and to CDOs. None of the corrective disclosures relate back to the price-maintaining statements. And if you look at this court's decision in Barclays, again, on the corrective disclosure date, the New York State Attorney General sued and said that the price-maintaining statements were not true. It's hard to see a case where you could have a more clear contradiction. In addition, Judge Crotty did not go statement by statement. He just talked about the statements, and I think it's critical. Wait, Judge, it seems to me you're trying to flip the presumption here. Judge Crotty doesn't have to – how is it that the plaintiffs have to establish price maintenance up front before you pick up the obligation under Basic to rebut the presumption and come forward with evidence that there's no connection between the disclosures or the statements and the price reduction? There's no question. Because clearly you have the burden. No question, Your Honor. We've told you that already. So how – I have a hard time understanding how the burden works on the front side from their standpoint. The way the burden works is you have to apply the preponderance of the evidence standard. And this court has repeatedly said that the preponderance of the evidence standard gives the party that has the burden 50.1. And we have a little bit more of the burden than the other side does. The other side put forward no evidence at all to support their price maintenance theory. The other side's expert essentially just assumed that. Well, the expert said that you couldn't differentiate between what Goldman was saying, that what Goldman was saying was contrary to what was the fact, which was ultimately disclosed in the government investigations and complaints. And so he said you can't just separate out the fact that there's now a government action. It's not just the government action. The government action is also something else. It's nondisclosure of significant, compelling conflicts of interest, allowing one investor to control the investment strategy that shorts the investment and then selling that investment to the public as if it's a legitimate investment. But that doesn't go back to the price-maintaining statements, because all that's alleged in that complaint is that Goldman didn't disclose to ACA, which was the collateral selection manager, what John Paulson was doing. Goldman Sachs was not on both sides of this transaction. It wasn't alleged to not disclose that. That was disclosed. So the conflict that you're talking about is maybe between two customers, but Goldman Sachs in its conflicts warning, again, didn't promise perfection across every single one of its business. I appreciate that, but that seems to me more like a trial issue than it does an issue here. Trial issue. How many trials have there been in class action securities cases in the last decade? I think there have been about eight, and the reason why this appeal matters so much is there haven't been many, and there's obviously one of the reasons for 23F appeals is the enormous pressure to settle these types of cases and not have them go forward. That may be the reality in the district court, but it's not my job to eliminate trials. My job is to apply the law here, so my job is to figure out whether Judge Crotty got it right or not, and I guess my problem I keep having with your argument is that I don't see how you're separating out the materiality fight that you lost from the argument you're making now. Let me try one more time. Halliburton II said you can't artificially limit the evidence that gets considered in assessing price. I completely agree with that. I think we're repeating ourselves. You've saved three minutes for rebuttal. Let's hear from the other side. Can I touch one question? Sure, go ahead. There's a summary judgment motion that's been pending for months, right? Yes. And so discovery's over? Yes. And so I guess I'm trying to figure out what's next in this case. In other words, if you lose here, then you go back, and then the summary judgment motion just gets decided? Presumably, and then you would have a trial. Ah. But, again— Or you could win your summary judgment. Right. But I still think the problem, Judge Chin, is that when you look at the actual evidence that supports this application of price maintenance, there is no evidence that supports it. It's just speculation. And the other side says, well, because it relates to materiality, we should— The question is, this will be a class-determinative issue. That was true in Halliburton, too, with respect to loss causation. We'll hear from the other side. Thank you. All right, Mr. Gifford. Thank you, Mr. Gifford. Thank you, Your Honors. Tom Goldstein for the appellees. Judge Wesley, hello again. As Goldman tries to block and tackle this case into its second decade, it is important, I think, to focus— Could you pull the mic up a little bit? Of course. I apologize. Let me see. Is that better, Your Honor? Thank you. Of course. So it is really important to focus on what the legal standard is here, and the question is a very particular one, and that is, has Goldman carried the burden of proof of establishing that there was no price impact? And price impact is a binary thing. It is they're trying to say and tried to establish as a matter of fact that the statements here had no effect, the misstatements had no effect on the price. And it's a very difficult argument they're trying to make because when the statements happened, the corrective disclosures, and that's how you look at this in a price maintenance case, when they happened, the stock went down a lot. Wait a minute. The stock didn't drop a bit when newspapers like The Times and the Journal were reporting the existence of conflicts and Goldman's sort of selling out their clients. There were rampant articles like that, right? I think that's an overstatement, and I'll explain why. And I will explain why it is I don't think that you could possibly say that Judge Crotty's assessment of this was clearly erroneous. So they point to arguments. What's the explanation your expert offers for why the stock didn't move a needle, didn't move at all on the articles before the SEC action? For a variety of reasons. First is that these were accompanied in this period by a whole series of Goldman denials. Whoa, whoa, whoa. Denials don't make something a nondisclosure, right? If I can just get past the first sentence. I totally take the point. I am on board with your question. I'm going to give you a quite detailed answer, and that is I think the example that you gave to my friend about how when you have someone who's indicted and denies it really is a point in our favor. Because if you look at articles that say things like Goldman is a vampire squid and alleges things about Goldman that it's engaged in conflicts, the real question is when the government comes along with much more details, including the e-mails from Torrey and the like, about how it is, for example, that ACA was set up, which is something that the market did not know in the Paulson transaction, it's much more credible. And so, yes, I do think denials are quite important in this context because what happens is the articles describe conflicts. Conflicts are not illegal. Conflicts are not intrinsically bad. The question is, and in fact, the market liked the fact that Goldman was willing to engage in transactions that other investment banks weren't, that raised the prospects of conflicts because Goldman had systems for dealing with the conflicts, avoiding particular kinds of conflicts, and having very, very good disclosures. And so what Goldman said, both in the articles, and they way overstate the number of articles that don't have denials, but what it came along in and went to the trouble of issuing press releases, which is a really strong indication that this is a material issue, is that, yes, we see this, but all of these conflicts are disclosed and we follow the law in every respect. Then what happens is the SEC comes along and makes quite clear that that wasn't true, that when Goldman was telling the market, which is a classic price maintenance, and that is the market, something is disclosed to the market, which is like there's this real concern about Goldman, the vampire squid, is selling out its clients. Goldman then responds and says, no, that's not true. We have systems. So are you saying that the response was one of the misstatements? We do allege that the response was one of the misstatements. Yes, that's in the complaint. And I think that what is not clearly erroneous is the district judge's determination that you cannot say that there was no price impact. I do think that Judge Wesley has a point. The district court evaluated all the articles, right? In fact, he went to the trouble of saying he read them all personally. He did quite carefully review them in a lot of detail. I do think it's also fair to say that it's very difficult to disaggregate this argument from materiality. So there are a variety of arguments playing around in the case, and so this is the one that the initial statements are immaterial. And with respect, the first panel that heard this case heard the exact same argument. Now, it comes in different forms. It feels like close-hand magic where someone pulls out a dove and then another dove. You never know where materiality is going to show up in Goldman's argument. Now it's in the definition of a price maintenance case. But this is the argument that the statements weren't something that the market would include in the total mix of information. If we could just pause for a moment on the implausibility of that, that the market doesn't care whether it is that Goldman is selling out its clients. And when that's disclosed, the customers of Goldman will realize, well, if I put millions of dollars into this, Goldman may be betting against me. Now, is that possible? But is it more likely than not? I think Judge Crotty, who has been very familiar with all the expert reports and read all the articles, said you cannot zero out price impact here. You cannot say that there was no effect on the price when it was that these were revealed to be misstatements. And just to give you— The obvious question that your expert didn't answer and Judge Crotty didn't even attempt to answer is why there was not even modest movement with the newspaper reports of conflicts that predated the SEC complaint. So two things about that. The first is Judge Crotty, of course, has a different opinion, and then another opinion when they ask him to reconsider it, and another one. And that's about materiality. I'm not talking about materiality. I'm talking about price impact. The fact that the price doesn't move with newspaper articles that relate the conflict. I apologize. What's the explanation for that not moving? That is, in fact, what the court instructed him to do. So I guess I respectfully disagree that he does not discuss this. He says in terms that those articles were accompanied by significant denials by Goldman and that they were much less detailed and that the disclosure that it comes from the SEC— That would explain why the market didn't consider that even worth noticing. Your Honor, I— Because there was a denial. I do think— There was a denial after the SEC complaint as well, right? This is your point about when you're indicted, Your Honor, that it's a big difference from when there's a book review in the New York Times which is accompanied by a denial. And then the SEC files a complaint with unbelievable details, with quotes from the actual emails, with the structure of the ACA part of the Paulson transaction which hadn't been disclosed to the market at all. So I do think that Judge Crotty was not remotely clearly erroneous to say these are of a different order of magnitude when it's quite clear that the government regards these as incredibly significant conflicts that have not been disclosed. Can I just say there is one kind of mathematical proof, if you will, of this, and that is the other side agrees that the corrective disclosures were material. They obviously were. The stock went down a lot. But what they are trying to do is put this into the box of saying that the market only cared about this because they cared about the cost of the investigation that would result. Remember that the settlement that comes from the SEC is $550 million. As a result of these disclosures of the government investigating this and the fact that there were unresolved conflicts, undisclosed conflicts, Goldman Sachs goes down by $15 billion. So it seems really kind of incongruent to say that all that the market was concerned about is the prospect of a governmental investigation. It's also just very difficult to disaggregate those two. Well, it's very difficult to disaggregate, but someone's going to have to disaggregate them at some point, right? I quite agree. Has your expert attempted to disaggregate them at this point? The expert has. The expert, for example, pointed to analyst reports in the wake of the SEC disclosure that said quite clearly that this raised a serious concern about what was regarded as the Goldman premium, and that is that Goldman would lean in— How did that disaggregate the fact of an investigation from the disclosure of the conflict-clearing practices of Goldman? Yes, because it talks about how the investment banks in their analyst reports are saying that people will be less likely to invest in Goldman because the premium is gone, that customers are going to lose faith in Goldman and its reputation. The going-in proposition was that Goldman was willing to be more aggressive about certain kinds of investments because while they raised the prospect of conflicts, those conflicts were managed, and that these disclosures by the government showed that no, it was in fact not managing the conflicts. That meant to potential customers of Goldman, if you invest with Goldman, they may be betting against you. You may be set up to lose. We describe—it's not just abacus. There are several of these CDO-type arrangements, and so you had situations in which Goldman was saying to someone, okay, if you invest in this tranche of investments, we are long with you. And that was true to the tune of $9 million. But weren't allegations like that in the prior articles? Again, of a significantly different degree, without nearly the level of detail, and accompanied by Goldman's denials. Can I just say that I do think, Your Honor, when it comes to a statement in a book review in the New York Times, when Goldman goes to the trouble of saying, okay, we see this claim about a conflict, we manage that conflict, which is a complete answer. There are a couple of things about that. The market generally respects people who stand up and speak for Goldman. We don't just say that they can't possibly be telling the truth. I mean, some of the articles even take umbrage with some of the assertions made against Goldman to some degree. They defend Goldman. Of course they do. In terms, the majority of them do. But not like the articles are— I mean, it's hard for me to understand how an article is equal to an SEC assertion or an announcement of a settlement with the SEC where Goldman's going to pay half a billion dollars. Right. And we would have to— Goldman has to win not only that thing that's hard to believe, but also that it was clearly erroneous to determine that it had— that Goldman had failed to prove that there was no price impact whatsoever, that every single bit of the decline in the price was attributable solely to a concern over the government investigation, not how customers would regard Goldman, and that caused the stock to drop. That is a very, very difficult proposition to swallow. Your time's almost running out, but what do you make of the fact that Dr. Choi didn't analyze the last two corrective disclosures? I mean, Goldman carries—Goldman's burden here is to explain all of the events and why they had no—why it had no price impact. I mean, there's a failure of proof in that regard completely, isn't there? Absolutely. There's no empirical analysis whatsoever in addition to the fact— I don't understand why Dr. Choi didn't finish his work. You know, I think it's kind of overdetermined. I mean, you can come up with a long list of difficulties in Dr. Choi's work. My favorite is this, and that is he self-selected out these three factors in which he placed significantly more weight on the fact that there was an allegation against an individual employee, Mr. Choi, and no weight whatsoever about the significance of the allegations against the company and how central it was and the precise form they took. I mean, there's a lot of self-selection, and at the very least, all I would ask is you sent this case to Judge Crotty to take a hard look at this question. He had an evidentiary hearing. He had a whole set of arguments. He read all the articles personally. To say that he got it clearly erroneous seems a bridge too far. Thank you. We'll hear the rebuttal. Our point is that Judge Crotty did not consider the evidence properly because, as the other side just conceded, he doesn't have evidence in this record that these were price-maintaining statements. None. There's no evidence contradicting the ten decisions of this court saying that no one would rely upon these statements. You need to have a price-maintaining statement, like in the Vendy where the company talked about, you know, we have lots of cash, and then it turns out it doesn't. Not some statement like, you know, integrity is important to us. Those are the price-maintaining statements. He mentioned before that it was supposedly a denial was one of the statements that was challenged on class certification. Not so. It's just the business principles and the conflicts warning, which has turned into a guarantee. Do you think that Barclays gives you a problem in that regard? I mean, the Barclays statements, Wagoner, were somewhat general to some degree in the sense that they were talking about a trading mechanism, but generally that the public was protected. No, because Barclays, the thing you should take away from this argument, Your Honor, the district court dismissed all of the general statements, and the case was all about the specific statements. The district court dismissed several general statements also, did it not? The only general statements that were dismissed here was the allegation that Goldman Sachs had an obligation to disclose the existence of a Wells notice that had been served by the SEC. Now, it's hard to understand how you can square that analysis with keeping the other statements in the case, but I go back to what I said before. You can't just ignore what the statements say. The statements are evidence, and that evidence needs to be considered, and under the theory that's being pushed forward here, all a plaintiff has to do is point to general statements like this, say they're price-maintaining, point to a stock drop, and you have a case, and you have price impact, without evidence of price impact. He doesn't have any evidence of price impact. His expert just found abnormal returns on one day. He said that there were supposedly analyst reports. There were 880 analyst reports during the class period. None of them mentioned the so-called price-maintaining statements, and certainly there were none around the times of the abacus complaint saying that the drop in the stock price was because the market learned that the price-maintaining statements were not true. No one referenced Goldman Sachs' business principles and investors saying, voila, we now know that business principles are not true, and they don't follow them in every instance, because, as this court has repeatedly said, no reasonable investor would rely upon such statements. So that goes to price impact. You can't just say, well, it's materiality, so it's completely off the board. That's the error that was made, and I really urge the court to look at Halliburton II, where you had lost causation evidence, which was a class-wide issue, very important to the merits, and the chief justice said, no, you've got to consider that, and then on remand in Halliburton II, the district court basically did a redo. He's saying that if a company is doing something wrong, and for years they say we're not doing it wrong, but ultimately, and their stock price is reflective of the fact that nobody knows they're doing something wrong, that later on when somebody says you did something wrong, that those aren't price-maintaining statements. No, in fact, the Second Circuit has rejected that. In the UBS case, which two members of this panel were on, disclosure is not a right of contrition, and just because you make general statements that we aim to comply with law, you don't have an obligation to disclose every act of wrongdoing, and that's clear, settled Second Circuit law. What the other side wants this court to do is ignore the fact that the premise behind those Second Circuit decisions that we cite is that no reasonable investor would rely upon them. The evidence in this case supports the premise. There's no evidence that any reasonable investor relied upon these price-maintaining statements, and the other side says, well, we don't even have to look to see whether on the corrective disclosure dates the reason the stock price dropped was because investors realized that the price-maintaining statements that they wouldn't rely upon caused the drop. There's no evidence, and in fact, he made a reference to the Hudson CDO on the third, there was an article on 5382, New York Times front page, 5382, all talking about in detail the Hudson CDO, which is supposedly the third corrective disclosure. So it's front page New York Times, no stock drop, and so the problem here is what the other side is doing is taking the price-maintenance theory and expanding it well beyond the narrow confines which it has had. There's no evidence that these statements were price-maintaining, and there's no evidence of a link between their so-called corrective disclosure dates and the supposedly price-maintaining statements, and Judge Crotty didn't analyze the statements, didn't analyze the corrective disclosures, and they basically assumed, well, because it dealt with materiality, it's off the table. Well, that's not what the Supreme Court held in Halliburton II. Thank you. We will reserve a decision. Well argued. Well presented. I'll ask the clerk to adjourn.